UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATTHEW M. STEVENS,

                             **Plaintiff,**

  vs.                                                      6:20-CV-317
                                                              (MAD/ML)

CITY OF ONEONTA, STEVE KRUH, and
GREG MATTICE,

                             **Defendants.**
_____

APPEARANCES:                                   OF COUNSEL:

MATTHEW M. STEVENS
391 South America Road
Worcester, New York 12197
Plaintiff *pro se*

COUGHLIN & GERHART, LLP
P.O. Box 2039
99 Corporate Drive
Binghamton, New York 13902-2039
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff commenced this action on March 20, 2020, alleging disability discrimination and failure to accommodate in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. *See* Dkt. No. 1. On June 15, 2020, Defendants moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 17-19. Plaintiff opposed Defendants' motion to dismiss and cross moved to amend his complaint. *See* Dkt. No. 22.

For the reasons set forth below, Defendants' motion to dismiss is granted and Plaintiff's cross motion to amend is denied as futile.

## II. BACKGROUND

Plaintiff began his employment with Defendant City of Oneonta on or around July 20, 2009. *See* Dkt. No. 22 at 19. Plaintiff was promoted to Wastewater Treatment Plant Operator on or around September 22, 2010. *See* Dkt. No. 18-1 at 12. Plaintiff was supervised by Defendant Steve Kruh, Chief Wastewater Treatment Plant Operator, until Defendant Kruh's retirement on September 28, 2018. *See id.* Defendant Greg Mattice, City Engineer, supervised Defendant Kruh since December 2015.

On December 13, 2016, Plaintiff claims that he received a negative evaluation by Defendant Kruh. *See* Dkt. No. 22 at 60. Plaintiff drafted a rebuttal to the evaluation, which he claims was not well received. *See id.* On December 22, 2016, Plaintiff contends that, in retaliation for his rebuttal to the evaluation, Defendant Kruh forced him to clear vegetation from a fence in freezing weather. *See id.*

On March 14, 2017, Plaintiff claims that he attempted to take the day off of work because of a "major snowstorm," but Defendant Kruh forced him to come into work. *See id.* Plaintiff further alleges that, on that day, all other employees were permitted to leave by noon, but he was forced to work until 4:30 p.m., which unnecessarily put his life in danger. *See id.* Additionally, on November 15, 2017, Plaintiff claims that he was exposed to a chemical while at work that caused him to remain out of work until early January 2018. *See id.*

On January 16, 2018, Plaintiff was examined by Dr. John J. May for his annual fitness test required by the City. *See* Dkt. No. 18-1 at 13; Dkt. No. 22 at 60. Upon completion of the examination, Plaintiff believed that he had passed without issue. *See id.* That same day, Plaintiff

gave Defendant Kruh a copy of his "Fit Test Paperwork," on which it was noted that Plaintiff suffers from sarcoidosis.[1]

On February 15, 2018, with the assistance of Defendant Kruh, Plaintiff signed up for the Grade 4 examination scheduled to be administered on March 2, 2018, which was necessary for a potential promotion. *See id.* at 14; Dkt. No. 22 at 60. On February 23, 2018, Plaintiff was instructed to attend a meeting with Katie Bottger, personnel director for the City of Oneonta, Defendants Mattice and Kruh, and Matthew Harper, a union representative. *See id.* At the meeting, Defendant Kruh informed Plaintiff that the City had received a letter from Dr. May dated February 14, 2018, indicating that the SCBA[2] protective masked used at the wastewater treatment plant could make it difficult for Plaintiff to breath and function normally, and that he should refrain from continuing work at the facility until a cardiologist could verify that it was safe for him to return to work. *See id.* Plaintiff also claims that, at this meeting, he explained to those present that he suffers from sarcoidosis, "a medical condition characterized by inflammatory cell growth on the lungs and heart." Dkt. No. 18-1 at 15. Plaintiff further explained that he was diagnosed with sarcoidosis prior to beginning his employment in 2009 and that, as a result of the condition, he frequently experiences "symptoms such as shortness of breath when standing or walking for sustained periods of time." *Id.* Additionally, Plaintiff claims that he asked Defendant Kruh whether he would be permitted to sit down to perform certain tasks when appropriate. *See id.* In response, Defendant Kruh informed Plaintiff that he had to remain standing except during his designated break periods. *See id.* at 16. When Ms. Bottger questioned Defendant Kruh

---

[1] Sarcoidosis is an inflammatory disease in which granulomas, or clumps of inflammatory cells, form in various organs. The growths most commonly occur in the lungs, lymph nodes, eyes, and skin.

[2] "SCBA" is the acronym for self-contained breathing apparatus.

regarding the standing requirement, Defendant Kruh stated that Plaintiff "sleep[s] on the job" and, therefore, should not sit.  *See id.*

As a result of Dr. May's letter, Plaintiff was placed on sick leave effective February 26, 2018, and the Grade 4 examination was rescheduled for March 29, 2018.  *See* Dkt. No. 22 at 60; Dkt. No. 18-1 at 16.  While on sick leave, Plaintiff was examined by Dr. Peipei Zhou.  *See id.*  Upon conclusion of the examination, Dr. Zhou concluded that Plaintiff was fit to return to work on March 5, 2018.  *See id.*

Plaintiff claims that on March 20, 2018, he had a meeting with Defendants Kruh and Mattice.  *See* Dkt. No. 22 at 60.  At this meeting, Defendants Kruh and Mattice informed Plaintiff that he would not be permitted to take the Grade 4 examination on March 29, 2018.  *See id.*  Plaintiff also claims that Defendant Kruh discussed Plaintiff's job performance at this meeting, including the fact that Plaintiff does not respect him.  *See* Dkt. No. 18-1 at 17.  Plaintiff indicates that the fact that issues with his job performance were not previously raised and were only raised after Defendants learned of his pre-existing medical condition, lead to an inference that he was denied the opportunity to take the Grade 4 examination because of his medical condition.  *See id.* at 17-18.

On March 1, 2019, Plaintiff filed a charge with the New York Sate Division of Human Rights, charging Defendants with unlawful discriminatory practices relating to his employment because of a disability, in violation of New York laws and the ADA.  *See* Dkt. No. 18-1.  Plaintiff authorized the Division of Human Rights to accept his complaint on behalf of the U.S. Equal Employment Opportunity Commission ("EEOC").  *See id.*  The Division of Human Rights investigated the matter and on August 26, 2019, found no probable cause to believe that Defendants had engaged in unlawful discriminatory practices.  *See* Dkt. No. 18-2.  The EEOC

adopted the Division of Human Rights' findings on December 26, 2019. Plaintiff commenced this action on March 20, 2020. *See* Dkt. No. 1.

In their motion to dismiss, Defendants first argue that the Court should dismiss Defendants Kruh and Mattice because there is no individual liability under the ADA. *See* Dkt. No. 19 at 8-9. Next, Defendants contend that Plaintiff's ADA claims are barred by the statute of limitations because his March 1, 2019 complaint with the Division of Human Rights was filed more than 300 days after the last alleged discriminatory act. *See id.* at 9-10. Finally, Defendants contend that Plaintiff failed to exhaust his administrative remedies. *See id.* at 11-12.

### III. DISCUSSION

**A.     Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "'construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quotation omitted).

**B.     Individual Liability Under the ADA**

Defendants contend that the claims against Defendants Kruh and Mattice must be dismissed because individuals are not subject to liability under the ADA. *See* Dkt. No. 19 at 8-9. The Court agrees. The Second Circuit has specifically held that the ADA does not provide for

6

actions against individuals.  *See Darcy v. Lippman*, 356 Fed. Appx. 434, 437 (2d Cir. 2009).  As such, Defendants' motion to dismiss Defendants Kruh and Mattice is granted.

**C.     Statute of Limitations**

A plaintiff asserting a claim under the ADA must bring a complaint of workplace discrimination to the EEOC within 300 days of an incident's occurrence, and then file a related lawsuit within 90 days of receiving a notice of right to sue from the EEOC.  *See Bowens v. Corr. Ass'n of New York*, No. 19-CV-1523, 2019 WL 1586857, *5 (E.D.N.Y. Apr. 12, 2019); *Tiberio v. Allergy Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011).  This filing period operates as a statute of limitations, so the failure to file a timely administrative complaint will bar a plaintiff's claims.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred."  *Id.*

In the present matter, Plaintiff filed his charge with the Division of Human Rights, and the EEOC, on March 1, 2019.  *See* Dkt. No. 18-1 at 11.  Plaintiff's charge states that "[t]he most recent act of discrimination happened on[ ] March 29, 2018."  *Id.* at 2, 5.  As such, Plaintiff's charge was filed with the Division of Human Rights 337 days after the last alleged violation of Plaintiff's ADA rights.

The only conduct alleged in Plaintiff's complaint or amended complaint that occurred within 300 days of March 1, 2019 is as follows:

> [The City] never posted the Chief Position in the Waste Water Treatment Plant.  There is a notification board in the main office and no posting was ever posted for Chief Position.  I didn't know

> the position was officially available.  Or how and when to apply for said position[.]  When Steve Kruh was retiring in September 2018.  Steve Kruh and Katie Bottger both knew that I don't have internet in my home or cell service.  I rarely buy the local newspaper.  Failure to let me take the Grade 4 Certification Exam prevented mobility and future economic gain in the field of Waste Water.

Dkt. No. 1 at 12; Dkt. No. 22 at 60-61, 66-67.  This claim, however, was neither contained in the charge with the Division of Human Rights, nor is it reasonably related to the claims in the charge.

Under the continuing violation doctrine, "if a plaintiff has experienced a continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it."  *Washington v. Cty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)).  It is well established, however, "that the 'continuing violation' doctrine cannot save untimely claims for discrete discriminatory acts, even where those discrete acts are related to acts within the limitations period[.]"  *Bright v. Coca Cola Refreshments USA, Inc.*, No. 12 Civ. 234, 2014 WL 5587349, *4 (E.D.N.Y. Nov. 3, 2014) (citing *Morgan*, 536 U.S. at 114).

The inquiry into whether timely and untimely acts are sufficiently related to invoke the continuing violation doctrine is flexible and fact-specific.  *See McGullam v. Cedar Graphics*, 609 F.3d 70, 76 (2d Cir. 2010).  Incidents that involve different perpetrators, actions, or targets, or are temporally distant from one another, may be insufficiently related.  *See id.* at 78.  Conversely, sufficient "relatedness" may be found where the timely and untimely incidents involve "the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers."  *Morgan*, 536 U.S. at 120-21.  Similarly, a plaintiff cannot establish a continuing violation "merely because the claimant continues to feel the effects of a time-barred discriminatory act."  *McFadden v. Kralik*, No. 04 Civ. 8135, 2007 WL 924464, *7 (S.D.N.Y. Mar.

28, 2007) (citing *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)); *see also Sirizena v. City Univ. of N.Y.*, No. 17-cv-7135, 2019 WL 1493220, *4-5 (E.D.N.Y. Mar. 31, 2019).

Here, Plaintiff may not use the continuing violation doctrine to save his untimely claims. While Plaintiff claims that Defendant Kruh's refusal to allow him to take the Grade 4 exam continued to impact him in that it made him ineligible for the Chief Position in the Waste Water Treatment Plant when it became available in September of 2018, that is simply the continued impact of conduct that occurred in March 2018. *See Sirisena*, 2019 WL 1493220, at *5 (holding that the plaintiff "may not use the continuing violation doctrine to save his untimely claims simply because he 'continues to feel the effects' of the time barred employment decision") (citing *McFadden*, 2007 WL 924464, at *7). Indeed, the fact that Plaintiff may continue to suffer consequences in the future from being denied the opportunity to take the Grade 4 exam is irrelevant. "[T]he proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful." *Chandon v. Fernandez*, 454 U.S. 6, 8 (1981) (emphasis in original).

Based on the foregoing, the Court grants Defendants' motion to dismiss Plaintiff's complaint as untimely. The Second Circuit has held that a court "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991). Here, however, Plaintiff filed a cross motion to amend and an amended complaint in response to the motion to dismiss and it failed to identify any potentially timely claims. Even assuming that Plaintiff could identify alleged discriminatory acts that occurred within 300 days of the filing of his charge, he failed to include those allegations in the charge before the Division of Human Rights (when he was represented by counsel) and this failure would deprive the Court of

jurisdiction to hear those claims.  *See Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293, 300 (S.D.N.Y. 2016).  As such, the Court finds that dismissal of Plaintiff's claims with prejudice is appropriate, because any further amendment would be futile.  *See Caddick v. Personnel Co. I LLC*, No. 16-CV-7326, 2018 WL 3222520, *8 n.5 (S.D.N.Y. June 29, 2018) (dismissing the plaintiff's claims with prejudice because leave to amend would be futile).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's cross motion to amend is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: October 6, 2020
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge